KENNETH M. SORENSON
United States Attorney
District of Hawaii

REBECCA A. PERLMUTTER
Assistant United States Attorney
GWENDELYNN BILLS
Trial Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Email: Rebecca.Perlmutter@usdoj.gov
Email: Gwendelynn.E.Bills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DARREN PATRICK RILEY,<br><br>Defendant. | CR. NOS. 23-00071-JMS<br><br>GOVERNMENT'S CORRECTED SENTENCING MEMORANDUM; CERTIFICATE OF SERVICE |

## GOVERNMENT'S CORRECTED SENTENCING MEMORANDUM

By and through the undersigned, the government respectfully submits this Sentencing Memorandum. Defendant Darren Patrick Riley ("Riley") is scheduled

to be sentenced on November 16, 2026, before the Honorable J. Michael Seabright. On March 11, 2026, Riley was convicted by a federal jury on all twelve counts of child exploitation offenses charged in a Superseding Indictment. Based on Riley's predatory conduct, his Sentencing Guidelines calculation is off the charts with a total offense level of 54, which translates into an advisory life sentence at offense level 43. To protect the community and provide just punishment, Riley should receive a life sentence.

## I. Riley's Sentencing Guidelines are Correctly Calculated.

The government has reviewed the Final Presentence Report ("PSR") and submits that it properly calculates Riley's Sentencing Guidelines range pursuant to the operative United States Sentencing Guidelines ("USSG"). Under the new grouping rules in the 2026 USSG, only the highest offense group is used in calculating the total offense level. That group—which accounts for only three of the twelve charges here—receives an adjusted offense level of 49. This level contains aggravating specific offense characteristics including enhancement for distributing CSAM to minors to coerce them into sexual activity, possessing CSAM involving the sexual abuse of infants and toddlers, and engaging in a pattern of activity involving the sexual abuse or exploitation of minors. PSR at ¶¶ 108–113. The level further includes an adjustment for obstruction of justice on two independent grounds. First, it considers Riley's perjured testimony at two

suppression hearings, which are discussed in greater detail below.[1] Second, as the court no doubt recalls, the defendant engaged in a consistent pattern of behavior designed to disrupt, delay, or halt the proceedings in this case including refusing transport, screaming when the Court took the bench, and stripping nude in the cell block to avoid appearance at trial.

It is worth noting that all counts of conviction, including those not part of the highest group, would result in substantial offense levels themselves after considering some of the serious aggravators in this case. Specifically, those guidelines included enhancement for unduly influence the minor victims and the commission of sex acts with the minor victims.

In addition to the 49 points for the highest group, Riley receives an additional 5-level enhancement for being a repeat and dangerous sex offender against minors pursuant to USSG § 4B1.5. Collectively, this results in a combined offense level total of 54.

The defendant also has a lengthy and concerning criminal history that results in 5 criminal history points. These points include convictions stemming from a 2011 arrest when Riley was found in possession of over 13 grams of

---

[1] Due to the transcripts of these hearings not being available at the time of the PSR, the Probation office deferred to the Court for any perjury findings. PSR at ¶ 116. Those transcripts have now been obtained.

methamphetamine and a revolver; a 2018 arrest when Riley was stopped while speeding on his moped, shoved the officers requiring them to use pepper spray to subdue him, and then spitting on an officer; and a 2020 arrest for smuggling over a thousand grams of methamphetamine hidden in a suitcase at LAX. [2] It was the latter arrest that set of the chain of events leading to the current case. He also has at least thirteen arrests that did not result in criminal history points, including for criminal contempt of court on numerous occasions, stealing, assault on a law enforcement officer, and terroristic threats. In total, Riley is in criminal history category III.

Riley maxes out the USSG Sentencing Table. Accordingly, his Guidelines are reduced to the upper limit of the table (offense level 43), and his advisory range is a lifetime term of imprisonment.[3] PSR ¶¶ 43 & 209.

## II. Argument

In addition to the advisory Guidelines, the Court must consider the factors outlined in 18 U.S.C. § 3553(a).[4] The government's sentencing recommendation

[2] On further review, the government agrees with Probation's determination that ¶ 135 correctly includes a statement that Riley possessed the CSAM charged in Count 12 while under a criminal justice sentence.

[3] Although some offenses here carry statutory caps of 240 months (Counts 5, 8, and 12) or 360 months (Counts 1, 2, and 3), numerous counts carry no such cap (Counts 4, 6, 7, 9, 10, and 11) and would allow for a lifetime sentence.

[4] **(a) Factors To Be Considered in Imposing a Sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)

is guided by those factors and the many aggravating circumstances in this case. A substantial sentence is necessary to reflect the nature and extent of Riley's conduct, account for the many victims, protect the community, and provide just punishment.

### A. Only a life sentence will provide just punishment for Riley's crimes against children and reflect the seriousness of the offense.

On four electronic devices, Riley amassed a collection of videos and images of child sex abuse material (CSAM) numbering in the thousands on each device. PSR ¶¶ 54–55. According to Riley's messages, he obtained the CSAM came from various online sources, including Telegram and Mega and other individuals with whom he traded the materials online. PSR ¶ 54. These materials included numerous videos and images of toddlers and infants being sexually abused and raped. PSR ¶ 55.

---

of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; . . .

Riley also preyed on at risk children. The Superseding Indictment charged him with child exploitation and trafficking offenses related to five children—middle school and early high school boys between the ages of 14 to 16 years old. Riley found these boys online—homing in on their particular vulnerabilities and insecurities. These boys bravely testified at trial and described Riley's predation. Some of the victims were experiencing financial insecurity at the time, and Riley offered them money and other things of value in exchange for sex. PSR ¶¶ 36, 45, 49, 51–51. But Riley did not stop there. Riley drugged and raped several of these boys, *e.g.*, MV1, MV2, MV5. Over text messages with an associate, he laughed about surreptitiously drugging MV1. PSR ¶ 38. MV2 testified that the drugs Riley gave him made him go in and out of consciousness while Riley engaged in sex acts with him after MV2 said no. PSR ¶ 40. MV5 also testified that despite telling Riley "no," Riley continued to engage in sex acts with him. PSR ¶ 52. Riley's callous disregard for the children he used and exploited for his own need for power and sexual gratification is further evidenced by the exchange with MV4 when MV4 disclosed to Riley that he lost friends and felt alone when his sexual orientation was revealed, Riley responded that he was sexually aroused. PSR ¶ 50. Riley did all of this knowing that these boys were children. PSR ¶ 38 (MV1 said his age, 14, at Riley's direction in one of the videos of his abuse); ¶ 39 (MV2 was 14 years old); ¶¶ 43–44 (MV3 was 14 years old and told Riley he was 15 years old

and too young to take an uber); ¶ 48 (Riley said "[d]amn that's really hot" when MV4 said he was 15 years old); ¶ 52 (Riley directed MV5 to a clinic that would "keep it confidential for minors" when MV5 was concerned that Riley had given him a sexually transmitted infection).

Riley preyed on children's vulnerabilities—their sexual orientation, their financial distress, and their familial strife. When the children said no or tried to stop his advances, he bombarded them with messages and relentlessly pushed harder or just overcame their will physically. Riley was not even deterred when law enforcement intervened with MV5, instead attempting to drag MV5 into his car to prevent MV5 from talking to the police. PSR ¶ 53. The trauma, confusion, guilt, and shame these children needlessly experienced at his hands, must be punished.

The offenses involving the five children charged in the case were not the only children Riley victimized. Based on the investigation, in 2019 and 2020, Riley appears to have attempted or engaged in hands-on sexual abuse of at least twelve other children, following the same predatory pattern that the boys described during trial. PSR ¶¶ 125–127.

## III. Riley is a recidivist and needs a substantial sentence to protect the community.

The only thing that stopped Riley's relentless and systematic hunt for new boys to sexually exploit was his September 2020 arrest at the Los Angeles airport and subsequent detention for trafficking pounds of methamphetamine. PSR ¶¶ 28-30. Despite the fortuitous circumstance of serving less than two years of prison for a ten-year mandatory minimum offense, Riley did not make any attempts at reform or change. Instead, in 2022, he immediately began to reoffend and distribute methamphetamine as soon as he was out on supervised release. PSR ¶ 133. As soon as he was caught by probation, he absconded supervision, went on the run, and kept dealing. PSR ¶ 133. When the U.S. Marshals tracked him down over three months later, he did not give up willingly. PSR ¶ 31. Instead, he struggled with law enforcement, creating an unsafe situation for himself and the officers. PSR ¶ 32. As detailed further below, this is just a small part of Riley's pattern of flouting the law and using all means to avoid accountability, including violence against law enforcement.

## IV. A life sentence will promote respect for the law.

Riley's predation on his victims alone warrants a lengthy sentence, but his conduct post-charging demonstrates that Riley is a unique danger who, rather than taking responsibility for his conduct, will abscond from authorities, lie to the Court, engage in a myriad of dilatory tactics, and even assault law enforcement all

in an attempt to get his way and avoid accountability. The sentence in this case must send a strong message that this behavior is intolerable in order to promote respect for the law.

Riley has refused to even participate in this sentencing process. As the PSR notes:

> The defendant declined to participate in a presentence interview, sign waivers for verification purposes, provide a collateral contact, or permit a home inspection. Accordingly, the information contained in Part C of this Presentence Report (PSR) was obtained from the defendant's prior federal PSR written in 2022 and other available records, where applicable.

PSR at ⁋ 146. The defendant also "declined to complete financial forms or consent to a credit bureau check." PSR at ⁋ 202. This severely limits the Court's ability to even assess Riley's history and characteristics. This is compounded by the fact that portions of Riley's background pulled from his prior PSR appear to be fabricated. As noted in the PSR, Riley claimed to be a Texas State Trooper, but there is no record of that; Riley claimed to be an Army Ranger and platoon leader, but this was not true; and Riley claimed to have deployed with General Dynamics to Afghanistan and Iraq into conflict areas alongside a Ranger regiment, but this also appears to be untrue. PSR at ⁋⁋ 164a, 167a, 169a. In short, there is no reason to believe any of the information Riley self-reported in his prior case has any basis in fact, absent independent corroboration.

This is consistent with Riley's conduct in this case, in which he lied under oath in an effort to suppress the evidence against him. The transcripts of the evidentiary hearings on January 21 and February 18, 2026 are now available, and they contain Riley's numerous lies under oath and the Court's findings of Riley's lack of credibility. In summary, Riley repeatedly advanced his own narrative of facts that was contrary to the other evidence in the record. Riley made these statements in affidavits, as well as during the suppression hearings, for the purpose of attempting to avoid responsibility in this case by suppressing the devices that contained the CSAM and chats with minors in this case. He would change his story as needed to attempt to mold his fabricated version to conform with the known facts. For example, at the second suppression hearing on February 18, the Court found: "the defendant's statements as to what occurred before [his recorded interview with DEA that was the subject of the second hearing] are simply not true and are not supported by the credible evidence." The Court summarized the issues at that hearing:

> The agent, he says, then tells the person utilizing the camera to stop recording. And he says he was then taken out of the interview room into the cell. And then later there was this alleged conversation telling him that everything here on out would be poisonous fruit and couldn't be held against him. **I just find those events did not take place. That's not credible.**
>
> I also find the test tape to the extent there was some discussion that the difference in the placement of the paper and the lack of the Hudson News bag and the lack of the phone during this test tape is evidence that there was

> some events that took place between the time of the test tape and the time of the recorded interview, the longer interview, to mean that, or be suggestive that there were Miranda warnings given that the defendant invoked. **I just also don't find that credible or correct.**

Riley's blatant lies to the Court during these hearings are further evidence of how little he cares for the authority of this Court or the rule of law more broadly.

Riley did not flout the Court's authority only by flagrantly lying under oath, he also engaged in a vast range of tactics designed to thwart the trial of this case beginning from the earliest hearings. These tactics are detailed in the PSR. *See* PSR ¶¶ 18–24. He successfully delayed his initial appearance and arraignment for almost a year by first refusing transport and then through his courtroom behavior, which ultimately resulted in a competency evaluation. PSR ¶¶ 18–19. After he was found competent, Riley then participated in this case without disruption until the Court denied his motions to suppress and it became clear that the overwhelming evidence would be presented at his upcoming trial. His antics then began again and escalated even further starting February 27, 2026 (following the denial of his second motion to suppress at the February 18 hearing). The conduct from then until his trial in absentia are detailed in the PSR and will not be fully restated here. PSR at ¶¶ 22–24. His behavior included refusing transport, refusing to walk on his own power, statements that he wanted to throw feces at the Court, earsplitting screaming, tearing up letters from the court, stripping naked in the cell

block, and then ultimately being non-responsive or pretending to be asleep while the Court advised him in the cell block that the trial would proceed without him.

While this conduct was occurring in Court, Riley was also racking up disciplinary infractions at BOP that correspond to these events. PSR at ⁋ 25. This culminated in two assaults on BOP staff—one on November 16, 2025 and the other on June 4, 2026. The latter was in conjunction with an attempt to bring Riley to Court. Riley yelled at the staff, then “aggressively swing his metal/steel hand restraints and struck one staff member on the forearm/hand and kicked another staff member in the shin.” *Id.* Even after the staff was able to get Riley to the ground, he “continued to kick a separate officer in the lower extremity.” *Id.* Ultimately, staff was required to use pepper spray to subdue the defendant. This harkens back to his interactions with Honolulu Police Officers following a traffic stop in 2018, when he resisted arrest and officers ultimately had to use pepper spray to subdue him. PSR at ⁋ 132.

Rather than use this case as an opportunity to learn from his behavior, accept responsibility, and begin conforming his conduct to the law, Riley has both metaphorically and literally fought accountability. His behavior is only escalating. Riley presents an obvious and significant threat to the community, and the Court can have no assurance after the totality of the history in this case that he will have learned any lessons. Thus, the Court’s sentence must serve the dual purpose of

incapacitating the defendant—preventing him from being a danger to the public—for a sufficient period of time and also promoting compliance with the law.

## CONCLUSION

For the foregoing reasons, the government asserts that a life sentence is warranted in this case.

DATED: November 11, 2026, at Honolulu, Hawaii.

Respectfully Submitted,

KENNETH M. SORENSON
United States Attorney

*/s/ Rebecca A. Perlmutter*
REBECCA A. PERLMUTTER
Assistant U.S. Attorney
GWENDELYNN BILLS
Trial Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following:

**Served via CM/ECF Notification of Counsel of Record:**

Benjamin Lowenthal, Esq.
Attorney for Defendant

DATED: November 11, 2026, at Honolulu, Hawaii.

*/s/ Rebecca A. Perlmutter*
Rebecca A. Perlmutter
United States Attorney's Office
District of Hawaii